
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## IN RE: REQUEST OF LOURDES A. LEON GUERRERO, *I MAGA'HÅGAN GUÅHAN*, RELATIVE TO THE VALIDITY AND ENFORCEABILITY OF PUBLIC LAW NO. 20-134.

Supreme Court Case No. CRQ23-001

## OPINION

## Cite as: 2023 Guam 11

Request for Declaratory Judgment Pursuant to
Section 4104 of Title 7 of the Guam Code Annotated
Argued and submitted on July 25, 2023
Hagåtña, Guam


**E-Received**
10/31/2023 11:33:02 AM

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                    Page 2 of 41

Appearing for Petitioner
*I Maga'hågan Guåhan*:
Leslie A. Travis, *Esq.*
Jeffrey A. Moots, *Esq.*
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, GU 96910

Appearing for *Amici Curiae* William S.
Freeman, M.D.; Bliss Kaneshiro, M.D.,
M.P.H.; Shandhini Raidoo, M.D., M.P.H.;
Famalao'an Rights; and the American Civil
Liberties Union:
Anita P. Arriola, *Esq.*
Arriola Law Firm
259 Martyr St., Ste. 201
Hagåtña, GU 96910

Vanessa L. Williams, *Esq.*
Law Office of Vanessa L. Williams, P.C.
GCIC Bldg.
414 W. Soledad Ave., Ste. 500
Hagåtña, GU 96910

Appearing for Respondent
Attorney General of Guam:
Douglas B. Moylan, *Esq.*
Attorney General of Guam
Office of the Attorney General
ITC Bldg.
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913

Appearing for Respondent
*I Liheslaturan Guåhan*:
Michael F. Phillips, *Esq.*
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagåtña, Guam 96910

Appearing for *Amicus Curiae* Robert Klitzkie:
Braddock J. Huesman, *Esq.*
Deborah E. Fisher, *Esq.*
Fisher Huesman P.C.
Core Pacific Bldg.
545 Chalan San Antonio, Ste. 302
Tamuning, GU 96913

*Amicus Curiae* Timothy J. Rohr, appearing *pro se*

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 3 of 41

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and JOHN A. MANGLONA, Justice *Pro Tempore*.

**TORRES, C.J.:**

**[1]** In 2022, the Supreme Court of the United States issued a watershed decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. ----, 142 S. Ct. 2228 (2022). *Dobbs* overturned decades of precedent, most significantly *Roe v. Wade*, 410 U.S. 113 (1973), which held that a woman's right to obtain an abortion was implicit in the Due Process Clause of the 14th Amendment. In the wake of *Dobbs*, states and territories are left to determine the legality of abortion without the constitutional shield provided by *Roe*.

**[2]** Guam is no exception. Earlier this year, the Attorney General of Guam, Douglas Moylan, filed in the District Court of Guam to revive Public Law 20-134, a 1990 law instituting a broad ban on abortion in Guam. P.L. 20-134 has been permanently enjoined since its passage because federal courts concluded it was unconstitutional. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422, 1426 (D. Guam 1990), *aff'd*, 962 F.2d 1366 (9th Cir. 1992), *as amended* (June 8, 1992). According to the Attorney General, since *Roe* is no longer good law, P.L. 20-134 should be enforceable. Besides opposing the Attorney General in federal court, Petitioner Lourdes A. Leon Guerrero, *I Maga'hågan Guåhan* ("the Governor"), filed a Request for Declaratory Judgment under 7 GCA § 4104 requesting that this court declare P.L. 20-134 void *ab initio* or that it had been impliedly repealed by subsequent acts of the Guam Legislature. Req. Declaratory J. (Jan. 23, 2023). Given the salience of this issue, we invited interested parties across Guam to weigh in on the Governor's request.

**[3]** We hold that P.L. 20-134 has been impliedly repealed by the Guam Legislature and no longer possesses any force or effect in Guam.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 4 of 41

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.      The Dispute**

[4]      In 1973, the U.S. Supreme Court declared criminalizing abortion in most instances violated a woman's constitutional right of privacy, implicit in the Due Process Clause of the 14th Amendment.  *Roe*, 410 U.S. at 154, *overruled by Dobbs*, 597 U.S. at ----, 142 S. Ct. at 2242.  In March 1990, the Guam Legislature passed P.L. 20-134, which was signed by Governor Joseph A. Ada.  P.L. 20-134 contained a broad ban on abortion, establishing criminal penalties for: (1) any person, including medical professionals, providing or administering drugs or employing means to cause an abortion, (2) any woman soliciting and taking drugs or submitting to an attempt to cause an abortion, and (3) any person who solicits any woman to submit to any operation, or uses any means, to cause an abortion.  Guam Pub. L. 20-134:3-5 (Mar. 19, 1990).

[5]      Less than a week after P.L. 20-134 was passed, a complaint was filed in the District Court of Guam, alleging the law violated the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution, the Organic Act of Guam, and 42 U.S.C.A. § 1983.  *Guam Soc'y of Obstetricians*, 776 F. Supp. at 1426.  The District Court concluded *Roe v. Wade* applied to Guam, deciding that Congress intended the people of Guam "would from 1968 onward be afforded the full extent of the constitutional protections added to Guam's Bill of Rights, as those rights are found in the United States Constitution and as they are construed and articulated by the United States Supreme Court."  *Id.* at 1427-28.  The District Court permanently enjoined the enforcement of P.L. 20-134 and declared sections two through five "unconstitutional and void under the U.S. Constitution, the Organic Act and 42 U.S.C. § 1983."  *Id.* at 1432.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 5 of 41

[6]     On appeal, the Ninth Circuit affirmed the permanent injunction. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1374 (9th Cir. 1992). The Ninth Circuit determined the Mink Amendment to the Organic Act extended the Due Process Clause of the 14th Amendment to Guam, and therefore *Roe* applied to Guam. *Id.* at 1370. Despite (and possibly because of) the District Court of Guam's permanent injunction, the Guam Legislature never expressly repealed P.L. 20-134.

[7]     The *Dobbs* decision overruled *Roe* and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and decided the right to abortion is not protected by the U.S. Constitution. *Dobbs*, 597 U.S. at ----, 142 S. Ct. at 2242. Consequently, the Attorney General of Guam issued a Notice of Motion to Dissolve Injunction of Guam Public Law 20-134. In this Notice of Motion, the Attorney General expressed an intention to vacate the injunction by the end of January, noting the Attorney General's Office is "duty-bound" to seek the injunction's dissolution. Req. Declaratory J., Ex. 2 at 1 (Notice Mot. Dissolve Inj., Jan. 11, 2023).

[8]     As we have the authority to interpret Guam's laws and are "the final arbiter of questions arising through the jurisdiction of the courts of Guam," *Underwood v. Guam Election Comm'n*, 2006 Guam 17 ¶ 35, the Governor requested this court issue a judgment declaring: (1) P.L. 20-134 void forever, such that it cannot be revived following the reversal of *Roe v. Wade*, (2) that the Guam Legislature did not have the authority to pass P.L. 20-134 pursuant to the Organic Act, and P.L. 20-134 is therefore void *ab initio* and invalid, and (3) to the extent P.L. 20-134 is not void or otherwise unenforceable, it has been repealed by implication through subsequent changes in Guam law. Req. Declaratory J. at 25-26. We agreed to hear Questions 2 and 3. Order (Feb. 18, 2023). On March 24, 2023, the District Court of Guam denied the Attorney General's Motion to Dissolve the Permanent Injunction, finding he did not meet his burden that "changed

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 6 of 41

circumstances warrant[ed] relief." Civ. Case No. 90-00013 (Order Den. Mot. Dissolve at 4 (Mar. 24, 2023)). The Attorney General has since appealed, and that matter is awaiting resolution in the Ninth Circuit.

**B. The Filings**

[9] In our February 18, 2023 Order, we designated the Attorney General of Guam as a Respondent, having inferred he does not view P.L. 20-134 as void *ab initio* or having been impliedly repealed. Order at 6 (Feb. 18, 2023). We also recognized the Governor's Questions concerned the powers and authority of the Guam Legislature and invited the Legislature to participate as a Respondent. *Id.* Further, "[c]ognizant of the importance and salience of this issue to so many stakeholders on Guam," we invited any party to file an *amicus curiae* brief. *Id.* The filings received and the positions taken are briefly summarized below.

### 1. The Governor

[10] The Governor contends P.L. 20-134 is void *ab initio* because the Guam Legislature was acting *ultra vires*, in violation of the Organic Act, when it passed the law. Alternatively, the Governor maintains P.L. 20-134 has been impliedly repealed by subsequent legislation regulating abortion care in Guam.

### 2. The Attorney General

[11] The Attorney General asks this court to dismiss the matter for lack of jurisdiction. In responding to the Governor's contentions, the Attorney General argues the Guam Legislature was not acting *ultra vires* when it passed P.L. 20-134. The Attorney General further asserts P.L. 20-134 was not impliedly repealed because P.L. 20-134 was not "in existence" when the subsequent statutes regulating abortion were passed. Finally, the Attorney General asks this court to order a referendum on the validity of P.L. 20-134.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 7 of 41

### 3. The Legislature

[12] The Legislature argues that despite the law being unconstitutional when it was passed, P.L. 20-134 remains "on the books" until the Guam Legislature repeals or amends it. The Legislature agrees that whether P.L. 20-134 was impliedly repealed is a matter for this court to decide, though it declines to wade into this debate.

### 4. *Amici* supporting the Governor: William S. Freeman, M.D., Bliss Kaneshiro, M.D., M.P.H., Shandhili Raidoo, M.D., M.P.H., Famalao'an Rights, and the American Civil Liberties Union

[13] *Amici curiae* William S. Freeman et al. are concerned with the First Amendment implications surrounding P.L. 20-134, as medical professionals may be prosecuted for advising patients about abortion as an option and the ability to obtain abortion care in Hawai'i. *Amici* Freeman et al. argue P.L. 20-134 was a legal nullity the moment it was passed, and, because the referendum required by section 7 of the law was a condition precedent that never occurred, the ban cannot be revived.

### 5. *Amici* supporting the Attorney General

#### a. Robert Klitzkie[1]

[14] *Amicus* Robert Klitzkie maintains this court should either dismiss the Petition because there is no constitutional standing or abstain from resolving the Governor's Questions. He argues that under this court's precedent, there is no jurisdiction to hear the case or issue an advisory opinion.

---

[1] Officially, *Amicus* Klitzkie filed his *amicus* brief in support of neither party. *See* Klitzkie Br. at 11 n.3 (Mar. 31, 2023). We group him with the Attorney General because the latter has adopted *Amicus* Klitzkie's position that there is no injury in fact in this case. Additionally, the Attorney General has filed a separate Motion to Dismiss which would achieve the same result as *Amicus* Klitzkie's ultimate position, which is for this court to decline to exercise jurisdiction in this case. *See id.* at 22.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 8 of 41

### b. Timothy J. Rohr

[15]     In addition to his challenge to this court's jurisdiction under 7 GCA § 4104 that this is not a "matter of great public interest," *Amicus* Timothy J. Rohr contends that P.L. 20-134 was not repealed by implication, as subsequent abortion legislation was simply a result of the Legislature following other jurisdictions and affirming the constitutional right to abortion "only because it had to." Rohr Br. at 3 (Mar. 13, 2023).

## II.  JURISDICTION

[16]     We have original jurisdiction over declaratory judgment actions regarding "the interpretation of any law, federal *or* local, lying within the jurisdiction of the courts of Guam to decide, and upon any question affecting the powers and duties of [*I Maga'håga*] and the operation of the Executive Branch, or *I Liheslaturan Guåhan*, respectively." 7 GCA § 4104 (added by P.L. 29-103:2 (July 22, 2008)); *In re Request of Leon Guerrero*, 2021 Guam 6 ¶ 8 (per curiam); *In re Request of Calvo*, 2017 Guam 14 ¶ 5.

[17]     Yet, before we can address the merits of the Governor's request, several parties now challenge the jurisdiction of this court. *Amicus* Klitzkie argues the Governor fails to show she has suffered an injury in fact, and so this case must be dismissed based on our decision in *In re A.B. Won Pat International Airport Authority*, 2019 Guam 6 ("*Airport Case*"). *Amicus* Rohr alleges that the Governor's request does not concern a "matter of great public interest" as required by 7 GCA § 4104. The Attorney General has also moved to dismiss this proceeding, arguing this court "lack[s] subject matter jurisdiction because the injunction [on P.L. 20-134] remains, and the questions [posed by the Governor] are not ripe and/or moot at this time." Mot. Dismiss at 3 (Apr. 3, 2023). For the reasons below, we determine we have jurisdiction to reach the merits of the case; the requests to dismiss are therefore denied.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 9 of 41

## A. Standing and the Airport Case

[18]  We have previously articulated that parties seeking to invoke this court's jurisdiction must generally show Article III standing. *Benavente v. Taitano*, 2006 Guam 15 ¶¶ 17-18 (noting that "state courts have observed that the traditional rules of standing apply" with limited exceptions). We have referred to these "traditional standing requirements" as "constitutional standing." *Airport Case*, 2019 Guam 6 ¶ 16. Constitutional standing requires a party to show: "(1) it has suffered an 'injury in fact'; (2) that the injury can be fairly traced to the challenged action taken by the defendant; and (3) that it is likely and beyond mere speculation that a favorable decision will remedy the injury sustained." *Id.* ¶ 17 (quoting *Guam Mem'l Hosp. Auth. v. Superior Court*, 2012 Guam 17 ¶ 10) (internal quotation marks omitted). Though this court is not an Article III court constitutionally bound to require parties to establish standing, we nevertheless have adopted "traditional standing requirements" based on Article III principals and "deriv[ed] guidance" from both state and federal courts. *Guam Mem'l Hosp.*, 2012 Guam 17 ¶ 9.

[19]  This case presents the opportunity to further clarify the origin and role of standing in Guam jurisprudence. Though grounded in the U.S. Constitution's case-or-controversy requirement, in the federal system, "[t]he law of Art. III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 594 U.S. ----, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). The role of the judiciary is limited: the doctrine of standing "prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, [standing] implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III." *Flast v.*

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                Page 10 of 41

*Cohen*, 392 U.S. 83, 96 (1968). Thus, "[f]ederal judicial power is limited to those disputes which confine federal courts to a rule consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Id.* at 97.

[20] As the Constitution divides power separately and equally between three branches of federal government, so too does the Organic Act divide the branches of government in Guam. We find that this similarity in separation of power compels our independent judiciary to require standing to assert claims before our courts. Standing ensures the political branches do not abdicate their responsibility in setting the public policy for Guam. Furthermore, our authority is limited to "justiciable controversies and proceedings." 7 GCA § 3107(a) (2005). Thus, our jurisdiction is constrained to disputes that are "appropriate for judicial determination" rather than those that are "hypothetical," "abstract," or "academic." *Maeda Pac. Corp. v. GMP Haw., Inc.*, 2011 Guam 20 ¶ 19. We reaffirm our commitment to a clear separation of powers between the judiciary and the political branches of government by imposing traditional standing requirements on parties before this court. This is the balance struck by the Organic Act in setting up the government for Guam, and standing is how the principle is effectuated in the judicial branch.

[21] We are also aware that the Organic Act grants the Legislature the ability to expand this court's original jurisdiction by law. 48 U.S.C.A. § 1424-1(a)(1) (Westlaw current through Pub. L. 118-19 (2023)). We have reconciled this grant of authority to the Legislature and the principle of separation of powers by recognizing that "standing is a self-imposed rule of restraint." *Benavente*, 2006 Guam 15 ¶ 16 (quoting *Gutierrez v. Pangelinan*, 276 F.3d 539, 544 (9th Cir. 2002)). As the U.S. Supreme Court has explained:

> The question whether a particular person is a proper party to maintain the action
> does not, by its own force, raise separation of powers problems related to
> improper judicial interference in areas committed to other branches of . . .

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 11 of 41

Government. Such problems arise, if at all, only from the substantive issues the individual seeks to have adjudicated. Thus, in terms of Article III limitations on . . . jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. It is for that reason that the emphasis in standing problems is on whether the party invoking . . . jurisdiction has 'a personal stake in the outcome of the controversy,' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests.'

*Flast*, 392 U.S. at 100-01 (first quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962); and then quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Because we are committed to a clear separation of powers, we will not use the "injury in fact" prong of constitutional standing to "undermine[] the separation of powers by invading the power of the legislature to create rights." *See Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 2021-NCSC-6, ¶ 56, 853 S.E.2d 698, 721. Where, as here, the case is presented in "an adversary context and in a form historically viewed as capable of judicial resolution," we will reach the merits despite the lack of an injury in fact if the case does not "raise separation of powers problems related to improper judicial interference in areas committed to other branches of . . . Government." *See Flast*, 392 U.S. at 100-01.

[22] To be clear, this is a narrow exception to the "traditional rules of standing," *see Benavente*, 2006 Guam 15 ¶¶ 17-18, that cannot be invoked arbitrarily. *Cf. People v. Tennessen*, 2010 Guam 12 ¶ 24 (per curiam) ("Thus, in an abundance of caution, and in the spirit of judicial transparency, this panel will pass on the standing issue and address the merits of Moylan's requests for disqualification."). Rather, we will look to established doctrines in American jurisprudence where courts have found it justifiable to rule despite a lack of an injury in fact. New Mexico provides a notable example. Though there is no constitutional provision requiring Article III-like standing, New Mexico state courts have "long been guided by the traditional

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 12 of 41

federal standing analysis." *See ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 10, 144 N.M. 471, 188 P.3d 1222. Despite this, the New Mexico Supreme Court has recognized an exception for cases involving "matters of great public importance." *Id.* ¶ 33 (citing *State ex rel. Sego v. Kirkpatrick*, 1974-NMSC-059, ¶ 7, 86 N.M. 359, 524 P.2d 975). This exception can be invoked when "the case presents a purely legal issue . . . ." *State ex rel. League of Women Voters of N.M. v. Advisory Comm. to N.M. Compilation Comm'n*, 2017-NMSC-025, ¶ 10, 401 P.3d 734 (citation omitted).

[23] We find this exception is consistent with Guam jurisprudence as well. In our earliest cases dealing with this statute, we commented that 7 GCA § 4104 could be used even when the test for standing used by federal courts was not met.[2] *See In re Request of Gutierrez*, 2002 Guam

---

[2] Although we have referred to "traditional rules of standing," *Benavente v. Taitano*, 2006 Guam 15 ¶ 18, and "traditional standing requirements," *Guam Mem'l Hosp. Auth. v. Superior Court*, 2012 Guam 17 ¶ 9, that are based upon Article III principles that "we do not reject," *Benavente*, 2006 Guam 15 ¶ 17, we note that "the test for standing that remains the law of standing at the federal level today" is quite modern, *see Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 2021-NCSC-6, ¶ 55, 853 S.E.2d 698, 720-21. As the North Carolina Supreme Court has observed in their thorough recounting of the history of standing:

> In 1992, with an opinion written by Justice Scalia, the Supreme Court dramatically altered the law of standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), when the Court held for the first time that plaintiffs had no standing to bring suit under a congressional statute authorizing suit because they lacked "injury in fact." . . .
>
> . . . .
>
> [T]he very notion of a standing requirement under Article III only arose in the twentieth century. . . . For most of the twentieth century, standing existed where there was invasion of a legal right under the common law, a statute, or the Constitution. The Supreme Court long emphasized a functional and pragmatic approach to the question of standing, focused on "concrete adverseness," generally limiting this concern to constitutional questions, and significantly expanded the categories of claims that could support standing. However, that expansion was reversed, first in the context of taxpayer and citizen suits and, later with the adoption of an "injury in fact" requirement, which has been increasingly used to constrain access to federal courts even where a statute creates a right to sue. Ultimately the Court adopted a restrictive interpretation of injury-in-fact that applied its substantially tightened requirements for standing to attack the constitutionality of acts of the other branches based on taxpayer or citizen standing beyond that context to rights actually created by Congress.

*Id.* ¶¶ 54, 57. In distilling "traditional" standing principles from Article III, we are not bound by *Lujan*; we may also find guidance in the Court's "attempt to expand standing under the injury-in-fact test announced in [*Ass'n of Data*

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 13 of 41

¶ 16 ("[H]earing a matter before it has ripened into a true case or controversy 'avoid[s] the necessity of creating harm to some party in order to have a decision.'" (second alteration in original) (quoting 7 GCA § 4104 cmt.)). We have continued to provide judgments under this statute even when an injury in fact was likely nonexistent.[3] *See In re Request of Camacho*, 2006 Guam 5 (providing declaratory judgment on whether a future governor could withdraw from a contract signed by a predecessor). Title 7 GCA § 4104 is a unique statute; only the Governor and the Legislature may seek declaratory relief in this manner. 7 GCA § 4104. And they may obtain such relief only if a strict jurisdictional test is met. *See In re Request of Gutierrez*, 2002 Guam 1 ¶¶ 14-15. One criterion of this test is that the request involve a matter of "great public interest." 7 GCA § 4104.

[24]    We hold that where the Legislature or the Governor has satisfied the jurisdictional requirements of 7 GCA § 4104, we will reach the merits of the declaratory action in the absence of an injury in fact if the case presents a purely legal issue in an adversary context that is capable of judicial resolution. *See Flast*, 392 U.S. at 100-01. Recognizing this narrow exception does not raise separation of powers problems, but rather respects the principle that the government of Guam is comprised of three separate but co-equal branches of government. This is because relief can be granted to one of the political branches only when the matter is of great public interest. Any issue that satisfies the jurisdictional test of section 4104 will therefore also qualify for the great public interest exception to "injury in fact."

---

*Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970),] and the adoption of a pragmatic and functional approach to the question in [*Baker v. Carr*, 369 U.S. 186 (1962),] and [*Flast v. Cohen*, 392 U.S. 83 (1968)]." *See id.* ¶ 51.

    [3] This court has dealt with only one instance of declaratory relief under 7 GCA § 4104 since the *Airport Case*. *See In re Request of Leon Guerrero*, 2021 Guam 6. There, no party raised standing, and so that case made no mention of what effect, if any, the *Airport Case* had on section 4104 review.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 14 of 41

## B. Statutory Requirements of 7 GCA § 4104

**[25]** Having determined the lack of an injury in fact is not fatal to our ability to adjudicate this matter, we next turn to whether the statutory requirements of 7 GCA § 4104 have been met.

> [T]o pass jurisdictional muster, a party seeking a declaratory judgment must satisfy three requirements: (1) the issue raised must be a matter of great public importance; (2) the issue must be such that its resolution through the normal process of law is inappropriate as it would cause undue delay; and (3) the subject matter of the inquiry is appropriate for section 4104 review.

*In re Request of Gutierrez*, 2002 Guam 1 ¶ 9. In our February Order, we determined the statutory requirements were met for two of the three questions posed by the Governor. Order at 5 (Feb. 18, 2023). We stand by the analysis in that Order and shall only summarize here.

**[26]** "[P]ublic interest . . . signifies an importance of the issue to the body politic, the community, in the sense that the operations of the government may be substantially affected one way or the other by the issue's resolution." *In re Request of Leon Guerrero*, 2021 Guam 6 ¶ 15 (alterations in original) (quoting *In re Request of Gutierrez*, 2002 Guam 1 ¶ 26). "[T]he issue presented must be significant in substance and relate to a presently existing governmental duty borne by the branch of government that requests the opinion." *In re Request of Gutierrez*, 2002 Guam 1 ¶ 26 (citation omitted). Whether P.L. 20-134 is a valid, viable law will substantially affect the operations of the Legislature, the Governor and subordinate agencies, and the Judiciary. The impact these Questions have on the executive branch is particularly notable, as agencies charged with the enforcement of this legislation may arrest individuals for engaging in certain conduct—resulting in significant consequences.

**[27]** *Amicus* Rohr argues since so few abortions happen in Guam, the matter of abortion is not of "great public interest," so jurisdiction is wanting. Rohr Br. at 4. There are three problems with his contention. First, although we find it unnecessary to reach on other grounds, the *ultra*

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                   Page 15 of 41

*vires* Question is unaffected by this argument. Though the Question involves the matter of abortion since it was the subject of P.L. 20-134, its real thrust is the authority of the Legislature to pass laws that conflict with the U.S. Constitution and the Organic Act. There is no connection between resolving that Question and the number of abortions performed in Guam. Second, Rohr's count of the people affected by P.L. 20-134 is an understatement. Apart from the act of getting an abortion, P.L. 20-134 also criminalized soliciting abortions, and people could be charged merely for encouraging another to have an abortion. P.L. 20-134:3-5; *see also* Pet'r's Br. at 25 (Mar. 10, 2023) (quoting *Guam Soc'y of Obstetricians*, 776 F. Supp. at 1426) (discussing arrest of director of ACLU's Reproductive Freedom Project for informing audience abortions could be obtained in Hawai'i). Police, prosecutors, and other government officials are also tasked with enforcing P.L. 20-134. Third and finally, this court has never used an empirical test for determining whether matters are of great public interest, and *Amicus* Rohr cites no authority for us to impose one now. His brief is also non-responsive to how the Governor's Questions fail this court's current test for evaluating matters of great public interest. Thus, we find the Questions posed by the Governor concern a matter of great public interest.

[28]    The second statutory requirement for declaratory judgments is that the normal process of law could cause undue delay. The pending appeal in the federal courts creates great uncertainty on when the federal injunction of P.L. 20-134 will be fully resolved. The Governor's implied-repeal Question is purely a matter of local Guam law over which this court is the final authority. We find this requirement is met.

[29]    That leaves only the appropriate-subject-matter prong, which is easily satisfied. To determine whether the subject matter is appropriate, we have stated that requests for declaratory relief must ask this court for "(1) an interpretation of an existing law that is within its jurisdiction

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 16 of 41

to decide; *or* (2) an answer to any question affecting [the Governor's] powers and duties as governor and the operation of the executive branch." *In re Request of Calvo*, 2017 Guam 14 ¶ 14 (quoting *In re Request of Gutierrez*, 2002 Guam 1 ¶ 11). The *ultra vires* Question asks this court to interpret the Organic Act regarding the proper authority of the Legislature. When the Legislature acts beyond its authority, the separation of powers doctrine is violated if the "[i]nvalid legislative actions 'impinge upon the Governor's authority.'" *In re Request of Leon Guerrero*, 2021 Guam 6 ¶ 23 (citation omitted). "Separation of powers questions are proper subject matter for declaratory judgment actions." *Id.* ¶ 12. This jurisdictional requirement is also met for the implied-repeal Question. The Governor is asking whether the Women's Reproductive Health Information Act of 2012, the Partial-Birth Abortion Ban Act of 2009, along with the enactment of 19 GCA §§ 4A101-102, 4A107, and 4A109 impliedly repealed P.L. 20-134. Req. Declaratory J. at 21-24. This request is asking this court to interpret local law—the effect these statutes did or did not have on P.L. 20-134. This prong is satisfied.

[30] Thus, the *ultra vires* and implied-repeal Questions meet the test imposed by section 4104, which confers jurisdiction on this court to provide declaratory relief.

## C. The Attorney General's Motion to Dismiss

[31] Before turning to the merits of the Governor's Questions, there is one other issue to address: the Attorney General's Motion to Dismiss. In his Motion, the Attorney General argues this court "lack[s] subject matter jurisdiction because the injunction [on P.L. 20-134] remains, and the questions [posed by the Governor] are not ripe and/or moot at this time." Mot. Dismiss at 3. He also claims the Petition no longer presents a "case or controversy" for this court to adjudicate. *Id.* at 5. Nowhere does the Attorney General mention the typical standing requirements of injury in fact, traceability, and redressability. In any event, any issues about

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 17 of 41

standing have been addressed by Part II.A of this Opinion. To the extent the Attorney General argues the Governor's Petition does not satisfy the statutory jurisdiction requirements of 7 GCA § 4104, that is addressed in Part II.B.

[32] This leaves the argument that the Governor's Petition is not "ripe and/or moot." *Id.* at 3. "'[R]ipeness is peculiarly a question of timing.' '[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (alterations in original) (citations omitted). The Governor's Questions are pure questions of law, and there is no need for further facts to develop. It would be inconsistent to say that not answering the Governor's Questions would lead to an undue delay yet declare the matter not ripe for judicial review. Any ripeness concerns have already been resolved with finding the undue delay requirement has been met.

[33] Finally, this matter is not moot. Cases generally become moot "when the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *Town House Dep't Stores, Inc. v. Ahn*, 2000 Guam 32 ¶ 9 (quoting *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir. 1994)). "[I]ntervening events or changed circumstances that make it impossible for a reviewing court to grant the complaining party effectual relief will render a case moot." *Linsangan v. Gov't of Guam*, 2020 Guam 27 ¶ 30 (per curiam) (alteration in original) (citation omitted). However, "[t]he mootness doctrine is 'flexible and discretionary; it is not a mechanical rule that we invoke automatically.'" *In re Guardianship of Ulloa*, 2014 Guam 32 ¶ 39 (quoting *In re Guardianship of Tschumy*, 853 N.W.2d 728, 737 (Minn. 2014)). We have "authority to decide cases that are technically moot when those cases are functionally justiciable and present important questions of [islandwide] significance." *Id.* (quoting *Tschumy*, 853 N.W.2d at 737).

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion　　　　　　　　　　　　　　　　　　　　　　Page 18 of 41

As discussed above, the Questions presented by the Governor raise matters of great public importance. Our standing discussion also highlights that this case is functionally justiciable. As we are "the final arbiter of questions arising through the jurisdiction of the courts of Guam (short of final *certiorari* review by the United States Supreme Court)," *Underwood*, 2006 Guam 17 ¶ 35, no intervening events or changed circumstances created by the Ninth Circuit will make it "impossible" for us to grant declaratory relief on a purely legal issue interpreting local Guam law, *see Linsangan*, 2020 Guam 27 ¶ 30; *cf. Webster v. Mesa*, 521 F.2d 442, 443 (9th Cir. 1975) ("While the completion of the election makes injunctive relief moot, declaratory relief is still available."). The issue is not moot. We deny the Attorney General's Motion to Dismiss.

## III. STANDARD OF REVIEW

[34]　"For cases brought before this court pursuant to our original jurisdiction, all issues are determined in the first instance." *In re Request of Leon Guerrero*, 2021 Guam 6 ¶ 20 (quoting *In re Request of Camacho*, 2006 Guam 5 ¶ 12).

## IV. ANALYSIS

[35]　With the jurisdictional issues resolved, we now turn to the merits of the Governor's request. As the Governor presents her Questions in the alternative, Pet'r's Br. at 38, we reach only the implied-repeal argument.[4] *See Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶ 30 ("[W]here statutes can be construed to avoid constitutional questions, this court will not answer the question of constitutionality or organicity.").

---

[4] While the court is unanimous on implied repeal, the concurrence would also answer the *ultra vires* question. *See infra* (concurring opinion of Carbullido, J.) ("[T]he Governor properly asked this court to answer an important question about the scope of the power and authority of the Guam Legislature. This question merits an answer.").

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                                      Page 19 of 41

## A. Implied Repeal

[36]     The Governor posits that in the years since the District Court of Guam enjoined P.L. 20-134, the Guam Legislature has passed several laws forming a comprehensive statutory scheme covering abortion in Guam, which is irreconcilably in conflict with P.L. 20-134.  Pet'r's Br. at 30.  Because P.L. 20-134 cannot be harmonized with subsequent legislation, the Governor argues P.L. 20-134 has been repealed by implication.  *Id.* at 29.

[37]     "Implied repeals can be found in two instances: '(1) where provisions in the two acts are in irreconcilable conflict,' or '(2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute.'"  *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 16 (quoting *People v. Quinata*, No. CR-81-0004A, 1982 WL 30546, at *2 (D. Guam App. Div. June 29, 1982)); *see also Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662-63 (2007) ("We will not infer a statutory repeal 'unless the later statute "expressly contradict[s] the original act"' or unless such a construction 'is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all.'" (alterations in original) (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988))).

[38]     Repeals by implication are generally disfavored, and courts "must try to read the [apparently conflicting] statutes in a harmonious manner."  *People v. Reselap*, 2022 Guam 2 ¶ 54; *see also Sumitomo Constr.*, 2001 Guam 23 ¶ 16 ("Courts can avoid a finding of implied repeal if the two statutes can be reconciled.").  In considering whether a later statute repealed an earlier statute, the tenets of statutory construction direct the analysis to first look at the plain meaning to resolve apparent conflicts and contradictions.  *Reselap*, 2022 Guam 2 ¶ 54.  "It is a cardinal rule of statutory construction that courts must look first to the language of the statute itself.  Absent clear legislative intent to the contrary, the plain meaning prevails."  *Sumitomo*

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                    Page 20 of 41

*Constr.*, 2001 Guam 23 ¶ 17 (citations omitted). "Whenever a court is confronted with apparently conflicting legislation, its goal is to ascertain the intent of the legislative body and construe the law accordingly. In determining the legislature's intent . . . , our first resort is to the language of the statute itself." *Karlin v. Foust*, 188 F.3d 446, 470 (7th Cir. 1999) (citations omitted).

[39]     The Governor contends the Parental Consent for Abortion Act ("PCAA") codified in 19 GCA § 4A101 *et seq.*, the Women's Reproductive Health Information Act of 2012 ("HIA") codified in 10 GCA § 3218.1, the Partial-Birth Abortion Ban Act of 2008 ("PBABA") codified in 10 GCA § 91A101 *et seq.*, and the Partial-Birth Abortion and Abortion Report law ("Reporting Law") codified in 10 GCA § 3218 irreconcilably conflict, individually and collectively, with P.L. 20-134. Pet'r's Br. at 29-36.

[40]     The Attorney General responds by arguing that P.L. 20-134 did not impliedly repeal subsequent legislation because P.L. 20-134 "did not exist" after the injunction in 1990. Resp't Att'y Gen. Br. at 26 (Apr. 21, 2023). He asserts the Guam Legislature passed the four subsequent abortion statutes in an attempt to "restrain abortions as much as they could because they knew that the Courts stopped their earlier attempt to make abortions illegal altogether." *Id.* at 28. The Attorney General maintains the four statutes do not form a regulatory scheme for abortion in Guam because when the statutes were passed, P.L. 20-134 did not exist. *Id.* at 38-39. His arguments here contradict what he filed in the District Court of Guam, where the Attorney General's Office wrote that "P.L. 20-134 did indeed conflict with the subsequently enacted legislation." Civ. Case No. 90-00013 (Att'y Gen. Reply to Pl. Opp'n Vacate Inj. at 3 (Mar. 7,

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 21 of 41

2023)).[5]  His federal filing continues to say, "If P.L. 20-134 is not void, subsequently enacted legislation would repeal, by implication, P.L. 20-134." *Id.* at 4.

### 1. Current Guam laws regulating abortion

[41]    The Governor argues four statutes—the PCAA, the HIA, the PBABA, and the Reporting Law—irreconcilably conflict with P.L. 20-134.  We summarize the content of each statute in turn.

[42]    The PCAA gives guidance on consent, specifically regarding pregnant minors.  This statute permits the performance of abortion on a minor if consent is received from the minor and a legal guardian.  19 GCA § 4A102 (added by P.L. 31-155:2 (Jan. 4, 2012)).  The statute also permits a minor to bypass the consent requirement with permission from the Superior Court.  *Id.* § 4A107.  The Department of Public Health and Social Services ("DPHSS") is also mandated under this Act to provide forms for reporting all consent statistics.  *Id.* § 4A106.

[43]    The HIA elaborates on consent in the abortion context, requiring voluntary and informed consent before any abortion procedure.  10 GCA § 3218.1 (added by P.L. 31-235:2 (Nov. 1, 2012)).  Providers are instructed to give information on the gestational age of the fetus and its anatomical features, possible childcare services and benefits, medical risks, and other scientific information.  *Id.*  DPHSS also must provide a checklist certification for a woman to certify that she has received all obligatory information before the procedure.  *Id.*

---

[5] We *sua sponte* take judicial notice of the Attorney General's filing in the pending federal case.  We have established that this court may *sua sponte* take judicial notice of certain documents on appeal.  *See In re San Nicolas*, 2022 Guam 8 ¶ 3 n.1.  In so doing, we do not mean to ignore the general rule providing that courts "may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).  Our judicial notice of the Attorney General's filings is only to establish the arguments he presented to the District Court.  In other words, the filings establish the position taken by the Attorney General, not whether his position is correct.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 22 of 41

[44]    The PBABA prohibits partial-birth abortion, imposing criminal penalties on any physician who knowingly performs or attempts to perform this procedure.  10 GCA § 91A104 (added by P.L. 29-115:1 (Nov. 18, 2008)).  Though, this statute does not apply to a partial-birth abortion to save the life of the mother.  *Id.*

[45]    Finally, the Reporting Law requires an abortion and post-abortion care report to be completed and shared with the Office of Vital Statistics of DPHSS.  10 GCA § 3218 (as amended by P.L. 33-218:7 (Dec. 15, 2016)).  Under this statute, the Office of Vital Statistics must provide, "to physicians performing abortions on Guam," forms for the abortion reports, and must publish a statistical report based on the previous year's abortion data.  *Id.*

### 2.   Other jurisdictions addressing implied repeal in the abortion context

[46]    Following both *Roe* and *Dobbs*, jurisdictions around the United States have had to confront implied repeal.  The position Guam is now in is analogous to both past and ongoing cases in other courts.

### a.   Jurisdictions finding implied repeal

[47]    In *McCorvey v. Hill*, the Fifth Circuit addressed a comparable situation and concluded that Texas statutes criminalizing abortion had been repealed by implication, as Texas regulated abortion "in a number of ways."  385 F.3d 846, 849 (5th Cir. 2004).  The state had established a comprehensive set of civil regulations governing the availability of abortion for minors, the practices and procedures of abortion clinics, and the availability of state-funded abortions.  *Id.* The Fifth Circuit determined the existing regulatory provisions could not be harmonized with provisions that purport to criminalize abortion:

> There is no way to enforce both sets of laws; the current regulations are intended to form a comprehensive scheme—not an addendum to the criminal statutes struck down in *Roe*. . . .  "[I]t is clearly inconsistent to provide in one statute that

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 23 of 41

abortions are permissible if set guidelines are followed and in another provide that abortions are criminally prohibited."

*Id.* (quoting *Weeks v. Connick*, 733 F. Supp. 1036, 1038 (E.D. La. 1990)).

[48]    In *Smith v. Bentley*, the United States District Court for the Eastern District of Arkansas considered whether certain abortion statutes had been impliedly repealed.  493 F. Supp. 916, 923-24 (E.D. Ark. 1980) (per curiam).  The court noted that the statutes had both similarities and distinctions, though notably, the regulatory scheme for the performance of legal abortions was "the most significant difference." *Id.* at 924.  Therefore, the court found the statute criminalizing abortion had been impliedly repealed.  *Id.*

[49]    The ACLU, arguing a similar position as the Governor does here, convinced a state circuit court to grant a preliminary injunction on a West Virginia "Criminal Abortion Ban." *Women's Health Ctr. of W. Va. v. Miller*, No. 22-C-556, slip op. (W. Va. Cir. Ct. July 20, 2022). The court determined that following *Roe*, the West Virginia Legislature enacted a comprehensive statutory framework, setting forth the circumstances under which an abortion may be lawfully obtained and addressing patient consent, parental notification, state funding, and state reporting. *Id.* at 5-6.  The court found this regulatory scheme irreconcilably conflicted with the Criminal Abortion Ban.  *Id.* at 5.  Following this ruling, state lawmakers met to "clarify and modernize" the old ban.  Campbell Robertson, *West Virginia Passes Strict Abortion Ban*, N.Y. Times (Sept. 13, 2022), https://www.nytimes.com/2022/09/13/us/west-virginia-abortion.html.

### b.  Jurisdictions finding no implied repeal

[50]    An Arizona Court of Appeals found no implied repeal between a statute permitting physicians to perform elective abortions and a statute prohibiting any abortion after fifteen weeks.  *Planned Parenthood Ariz., Inc. v. Brnovich*, 524 P.3d 262, 264 (Ariz. Ct. App. 2022).

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134*,
2023 Guam 11, Opinion
Page 24 of 41

The court determined that the statutes could be reconciled and refused to find that a supposed conflict between the laws must result in the repeal of either. *Id.* at 266. Finding the legislature had "created a complex regulatory scheme to achieve its intent to restrict—but not to eliminate— elective abortions," the court held that the statutes regulating abortion could "be readily reconciled in conformity with [the] legislature's express intent." *Id.* at 267-68. Reading the statutes together, the court concluded physicians could perform abortions as regulated, and that these physicians would not be subject to prosecution. *Id.* at 266.

[51] In *People v. Higuera*, the Michigan Court of Appeals found no implied repeal between a statute, which by its express terms prohibited all abortions unless necessary to save the mother's life, and subsequent legislative enactments about parental consent, informed consent, the prohibition of partial-birth abortions, and record keeping. 625 N.W.2d 444, 448 (Mich. Ct. App. 2001). The court held that, in enacting the later statutes, the legislature had the clear intent to regulate abortions permitted by *Roe* and did not intend to repeal the general prohibition of abortions. *Id.* at 448-49.

### 3. Subsequent legislation has impliedly repealed P.L. 20-134

[52] Turning back to this case, the Governor argues that provisions in subsequently enacted legislation are in irreconcilable conflict with P.L. 20-134. In deciding whether P.L. 20-134 has been impliedly repealed, this court must consider whether there is any way to construe the statutes at issue so as not to conflict. "We must read the statutes to give effect to each if we can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267 (1981). It is the duty of the court to "interpret statutes in light of their terms and legislative intent." *Port Auth. of Guam v. Civ. Serv. Comm'n (Javelosa)*, 2018 Guam 9 ¶ 15 (quoting *Carlson v. Guam Tel. Auth.*, 2002 Guam 15 ¶ 46 n.7). And "[s]tatutory interpretation should always begin with

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 25 of 41

the plain language of the statute." *Chargualaf v. Gov't of Guam Ret. Fund*, 2021 Guam 17 ¶ 17. The plain language of the statutes is clear. In establishing guidelines and requirements for the performance of abortion, including conditions surrounding reporting and consent, the statutes enacted after P.L. 20-134 provide a scheme for regulating abortion care in Guam. The Governor correctly observes that P.L. 20-134 cannot be harmonized with these other abortion-care statutes. Because P.L. 20-134 is so restrictive—criminalizing "[e]very person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to cause an abortion"—the subsequent statutes, providing directive on consent, DPHSS involvement, and the performance of legal abortion procedures, cannot be reconciled.

[53] Similar to *McCorvey* and *Higuera*, the statutes here govern consent, the availability of abortion for minors, and the practices and procedures of abortion clinics. The *McCorvey* and *Higuera* courts came down on opposite sides of implied repeal. The difference of decisions is based upon factual distinctions between the two cases. These distinctions illuminate the analysis of our four Guam statutes. In *Higuera*, the court was not considering the constitutionality of a statute that criminalized all abortions at any time during pregnancy but was narrowly focused to consider whether a particular criminal prosecution under the statute would be constitutionally infirm. 625 N.W.2d at 447. While the validity of P.L. 20-134 will affect medical professionals, here, the court is not only considering criminal penalty provisions. In *McCorvey*, the Fifth Circuit was looking at the constitutionality of a "comprehensive set of civil regulations" governing abortion. 385 F.3d at 849. The Governor relies heavily on this Fifth Circuit decision in arguing implied repeal, and significantly, the Attorney General offers no response to this case.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 26 of 41

**[54]** The Attorney General's soundest argument against implied repeal is his contention that the Guam Legislature did not intend to repeal P.L. 20-134 when passing subsequent abortion-care legislation. But "[a]bsent clear legislative intent to the contrary, the plain meaning prevails," and he has failed to "point[] out clear legislative intent" to keep the general prohibition of abortions to the extent permitted by the federal constitution. *See Sumitomo Constr.*, 2001 Guam 23 ¶ 17. The plain text of the later-enacted statutes overlaps and conflicts with P.L. 20-134, and, therefore, we do not need to consider the Legislature's intent in passing the law.

**[55]** We determine that persuasive authority favors finding P.L. 20-134 has been impliedly repealed. *Higuera* dealt with a far more limited statute than we are facing today, making a considerable difference. The near total ban on abortion imposed by P.L. 20-134 cannot be reconciled with subsequent enactments by the Guam Legislature. The logic in *Planned Parenthood Arizona, Inc. v. Brnovich*, 524 P.3d 262 (Ariz. Ct. App. 2022), may counsel for a finding against implied repeal, but we think it notable that the holding there was that the old law did not criminalize abortions made legal by subsequent legislation, *see id.* at 268. Finally, the Attorney General has provided no reason to dissuade us from adopting the Fifth Circuit's reasoning in *McCorvey*. We therefore hold that assuming P.L. 20-134 was a valid law, it has been impliedly repealed[6] by subsequent acts of the Guam Legislature.[7]

//

//

---

[6] Notably, this appears to be consistent with the position taken by the Attorney General in his filings in federal court. *See* Civ. Case No. 90-00013 (Att'y Gen. Reply to Pl. Opp'n Vacate Inj. at 4 (Mar. 7, 2023)) ("If P.L. 20-134 is not void, subsequently enacted legislation would repeal, by implication, P.L. 20-134.").

[7] Because we find P.L. 20-134 has been impliedly repealed, we need not and do not address the arguments of *Amici* Freeman et al. and the Attorney General on the referendum contemplated by P.L. 20-134.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                    Page 27 of 41

#### 4.   The Attorney General's other arguments on implied repeal are unconvincing

[56]    The Attorney General also argues that Guam's legislation governing abortion care cannot impliedly repeal P.L. 20-134 because P.L. 20-134 did not exist at the time of the subsequent enactments.  Considering the Attorney General maintains P.L. 20-134 is a valid law in his *ultra vires* argument, contending P.L. 20-134 did not exist after 1990 here is conflicting and incongruous.  The Attorney General is effectively declaring P.L. 20-134 to be "Schrödinger's Law"—maintaining the law was both invalid and valid while it was enjoined by federal courts.  This contradiction is an untenable position, and we cannot ascribe weight to it.

### B.  We Decline to Address the *Ultra Vires* Question

[57]    Having answered the implied-repeal Question, we do not believe it necessary to answer the *ultra vires* Question now.  Title 7 GCA § 4104 grants us discretion to provide relief.  Section 4104 draws inspiration from an analogous provision in the Massachusetts Constitution.  7 GCA § 4104 cmt.   True, the Massachusetts Constitution "*requires* the Justices to respond to such questions when properly put."  *Op. of the Justs. to the House of Representatives*, 32 N.E.3d 287, 292 (Mass. 2015) (emphasis added).   Crucially, the relevant provision of the Massachusetts Constitution reads: "Each branch of the legislature, as well as the governor or the council, shall have authority to *require* the opinions of the justices of the supreme judicial court."  Mass. Const. Pt. 2, C. 3, art. II (emphasis added).   Yet the Florida Supreme Court reads its power in a similar context as discretionary.  *Advisory Op. to Governor re Whether Article III, Section 20(a) of Fla. Const. Requires Retention of a Dist. in N. Fla.*, 333 So. 3d 1106, 1108 (Fla. 2022) (per curiam) ("[A]ssuming the Court has jurisdiction, . . . we exercise our discretion to deny the request for an advisory opinion.").   Florida's relevant constitutional provision reads: "The governor may *request* in writing the opinion of the justices of the supreme court as to the

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                                                   Page 28 of 41

interpretation of any portion of this constitution upon any question affecting the governor's executive powers and duties." Fla. Const. art. IV, § 1(c) (emphasis added).

[58]    Guam's statute is far more similar to Florida's than Massachusetts's.  Our statute reads: "[*I Maga'håga*], in writing . . . may *request* declaratory judgments from the Supreme Court of Guam . . . .   The declaratory judgments *may* be issued only where it is a matter of great public interest and the normal process of law would cause undue delay."  7 GCA § 4104 (emphasis added).    This section of Guam law also imposes non-discretionary directives which the Legislature has marked with the word "*shall*" with italics in the statute itself.  *Id.*  The language of section 4104 provides declaratory judgments "may be issued" while making clear that such judgments "*shall* not be available to private parties."  *Id.* (emphasis in original).  While the section does say this court "*shall* render its written judgment," that language at most means this court must provide written answers rather than orally or some other medium.  *Id.*  The placement of that language at the end of the section implies it only controls where the court has agreed to issue a declaratory judgment, rather than imposing a requirement to issue such judgments.

[59]    The implied-repeal Question is one purely of local Guam law over which this court is the final authority.  As the Governor presents her Questions in the alternative, we reach only the implied-repeal argument.  Pet'r's Br. at 38.  This is because the *ultra vires* Question concerns the Organic Act, and we will not answer the question of organicity unless it has "inescapably come before us for adjudication."  *Barrett-Anderson*, 2018 Guam 20 ¶ 30 (quoting *United States v. Rumely*, 345 U.S. 41, 48 (1953)).   Having resolved this case using only local law, we decline to address the *ultra vires* Question.

//

//

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                 Page 29 of 41

## V. CONCLUSION

[60]     *Dobbs* was a landmark case, changing the law on the ability of governments to regulate abortion.  Yet this case is not really about *Dobbs*; it is far more local in character.  In answering the implied-repeal Question, we dealt only with statutory interpretation of local law.  It is up to the political branches of government to set the policy for Guam.  This court, however, interprets the law as enacted.  In reviewing the Legislature's enactments, there is only one conclusion: P.L. 20-134 has been repealed by implication by subsequent acts of the Guam Legislature.

[61]     We enter this declaratory judgment: P.L. 20-134 has been impliedly repealed by the Guam Legislature and no longer possesses any force or effect in Guam.



|                /s/                |                /s/                |
| :-------------------------------: | :-------------------------------: |
|        ROBERT J. TORRES           |        JOHN A. MANGLONA           |
|          Chief Justice            |       Justice *Pro Tempore*       |

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134*,
2023 Guam 11, Opinion

Page 30 of 41

**CARBULLIDO, J., concurring:**

[62]    I agree with the majority on its jurisdictional analysis and its conclusion that Public Law 20-134 was impliedly repealed.  I further agree that 7 GCA § 4104 confers upon this court discretion to decline to provide relief even when its jurisdictional test is met.  Where I part ways, is the decision to use that discretion in this case.  In her *ultra vires* Question, the Governor properly asked this court to answer an important question about the scope of the power and authority of the Guam Legislature.  This question merits an answer.  I agree with the Governor that because *Roe v. Wade* was the law of the land in 1990, P.L. 20-134 was void *ab initio*, and the Legislature acted *ultra vires* in passing it.

### I.  P.L. 20-134 Was Void *Ab Initio*, and Passing It Was an *Ultra Vires* Act

[63]    The Organic Act was clear in 1990: "The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam."[8]    48 U.S.C. § 1423a (1988).    A straightforward reading of this provision leads to the following interpretation: the legislative power of Guam does not extend to acts inconsistent with the Organic Act; such acts would be beyond the Legislature's authority.  This provision existed in addition to a bill of rights specifically applicable to Guam, along with another provision incorporating several constitutional amendments to Guam.  *See* 48 U.S.C. § 1421b (1988).  To avoid rendering the language in § 1423a mere surplusage, that language must do more than simply allow for the enjoining of laws passed by the Guam Legislature that are in violation of the rights made applicable by § 1421b.  Harmonizing these provisions leads to the conclusion that inorganic

---

    [8]  This grant of authority was amended in 1998 by Pub. L. 105-291.  My *ultra vires* analysis is limited to the Organic Act as it was written in 1990.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 31 of 41

laws—laws that are inconsistent with the Organic Act—are "not law" and are void *ab initio*. *See*

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177-78 (1803).

[64]    Caselaw provides support for this position. This court has noted as far back as 2002 that

"[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no

protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never

been passed." *In re Request of Gutierrez*, 2002 Guam 1 ¶ 17 (quoting *In re Op. of the Justs.*, 168

N.E. 536, 538 (Mass. 1929)).[9] In *Nelson v. Ada*, another relevant case, the then-Governor of

Guam sought to remove two school board members. 878 F.2d 277, 278 (9th Cir. 1989).

According to the Governor, only he could appoint school board members per the Organic Act.

*Id.* Notably, Congress amended the Organic Act prior to the Governor removing the school

board members, and this amendment could have potentially allowed for elected school board

members, rather than gubernatorial appointments. *See id.* at 278, 280. Still, the court held the

change in the Organic Act should not be looked at retroactively. *Id.* at 280-81. Despite the

framework of the Organic Act perhaps changing, the court was concerned with the state of the

law as it existed when the school board members were first appointed. Thus, even when

potential changes occur affecting the framework of the local government of Guam, the analysis

is the state of the law when legislative action was first taken, not the date of the latest judicial

action.

---

[9] I acknowledge that in this portion of *In re Request of Gutierrez*, the court was explaining why declaring acts unconstitutional was not an appropriate use of 7 GCA § 4104 review. 2002 Guam 1 ¶ 17. What the Governor is doing here, though, is different. She is not asking this court to declare P.L. 20-134 unconstitutional; that already happened decades ago. Instead, she is asking this court to interpret the Organic Act to determine the scope of the Legislature's powers—a permissible use of 7 GCA § 4104 review. *See In re Request of Leon Guerrero*, 2021 Guam 6 ¶¶ 12, 23.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                    Page 32 of 41

**[65]** In 1990, the Organic Act placed a clear limitation on the Guam Legislature's authority: it did not have the power to pass laws in violation of the U.S. Constitution. Unconstitutional laws are no laws at all, having been treated as void by this court as well as others. Since P.L. 20-134 was unconstitutional in 1990, passing it was an *ultra vires* act, the law was void *ab initio*, and it cannot be revived by judicial action taking place over thirty years later.

## II. Neither the Attorney General nor the Legislature Provide a Convincing Response

**[66]** Neither the Attorney General nor the Legislature offers a convincing rebuttal to the Governor's and *Amici* Freeman et al.'s argument above. I address each party's position.

### A. The Attorney General

**[67]** First, the Attorney General argues that finding P.L. 20-134 to be an *ultra vires* act would violate the separation of powers. Resp't Att'y Gen. Br. at 9. He believes this court would be deciding "what the public policy shall be" if it finds P.L. 20-134 to be *ultra vires*. *Id.* at 10. How he arrives at this conclusion is unclear. The Governor's position is that the Guam Legislature exceeded its authority by passing a law that clearly violated existing constitutional jurisprudence. Even the Attorney General admits this court can declare laws unconstitutional. *Id.* at 8. There are no policy implications at play here, only a question of interpreting the powers and authority of the Guam Legislature under the Organic Act.

**[68]** The Attorney General next argues that finding the passage of P.L. 20-134 to be an *ultra vires* act would be the "Judiciary interject[ing] itself into the Legislative process of passing a bill into law." *Id.* at 12. Again, what this means is unclear. The Attorney General argues that such a finding would "deprive[] Senators from passing changes to an otherwise 'unconstitutional' law before the bill becomes a law and is thereafter tested in the Courts." *Id.* But the Governor is asking no such thing. She has initiated court proceedings to have P.L. 20-134 declared void over

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 33 of 41

thirty years after it was permanently enjoined as unconstitutional. This court action is coming only *after* the Legislature passed P.L. 20-134. There would be no interference in the legislative process. To the extent a court would look at the past, that analysis is only to determine what the state of the law was when the bill was passed. This type of analysis is not uncommon. *Cf. People v. Bosi*, 2022 Guam 15 ¶ 18 (analyzing what Guam law required when a criminal defendant was charged, not the present statute).

[69] The Attorney General goes on to ask, "how would the Senators know a bill is void because it's 'unconstitutional,' before that bill is tested" in the courts? *Id.* at 14. Such a question reflects a misunderstanding of the role of courts. Courts are not the only actors who can judge whether a statute is constitutional. The Attorney General himself seems to acknowledge just this in his implied-repeal argument, where he contends the Guam Legislature did not pass more restrictive bans on abortion because such attempts would be "futile." *Id.* at 26. Members of the Guam Legislature swear an oath requiring them to "well and faithfully support the Constitution of the United States [and] the laws of the United States applicable to Guam." 2 GCA § 1110 (2005). Senators thus have a duty to consider for themselves whether legislation is constitutional and vote against legislation that would violate the Constitution. Likewise, the Governor should veto any legislation that does not conform to the Constitution. The judiciary is not special because it alone determines what is and is not constitutional; rather, it is special because it is the *final* authority on what is and is not constitutional. *See Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) ("We are not final because we are infallible, but we are infallible only because we are final."). When there are disputes about what is and is not constitutional, the judiciary steps in to resolve the dispute. The judiciary is not the only branch responsible for ensuring actions by the government are constitutional.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                     Page 34 of 41

[70]     Declaring a law to be *ultra vires* would not upend the traditional judicial and legislative processes, as claimed by the Attorney General.  *See* Resp't Att'y Gen. Br. at 14-17.  There would not be pre-judgment of laws if Guam courts declared acts of the Legislature to be *ultra vires*. The Legislature would pass legislation, such legislation would be challenged, and then the courts would say such legislation was void *ab initio* because it exceeded the authority of the Legislature to enact such a change.  This is the process used regarding most agency actions at the federal level.  *See, e.g.*, *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1291 (D.C. Cir. 2000); *Removal of the Maximum Contaminant Level Goal for Chloroform From the National Primary Drinking Water Regulations*, 65 Fed. Reg. 34404, 34405 (May 30, 2000).  Agencies must ensure any prospective administrative rules are consistent with the law and constitution, lest a court "set aside" the rule and force the agency to start from scratch.

[71]     Next, the Attorney General invokes the Speech and Debate Clause of the Organic Act to argue this court lacks the power to declare P.L. 20-134 *ultra vires*.  To quote a recent Supreme Court case, "Th[is] is a non-sequitur to end all non-sequiturs."  *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 54 n.5 (2023).  The Speech and Debate Clause is irrelevant to the issue at hand and has no bearing on the relationship between the Legislature and the Judiciary.

[72]     Finally, the Attorney General asserts declaring P.L. 20-134 *ultra vires* would have "untenable policy implications."  Resp't Att'y Gen. Br. at 22.  He argues the adoption of an *ultra vires* doctrine would "presuppose[] that a judicial determination on [a] bill exists before the Senators consider a bill."  *Id.*  This alleged bad consequence is really no consequence at all because, as mentioned above, Senators have an independent duty to determine what is and is not constitutional, separate from the courts.  In his implied-repeal argument, the Attorney General maintains the Guam Legislature never passed stricter abortion laws because such attempts would

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                                    Page 35 of 41

be "futile." *Id.* at 26. How could attempts be futile unless the Senators were judging beforehand that passing potential laws restricting abortion would be invalidated by the courts? All the *ultra vires* doctrine would impose is that legislation is to be judged by the prevailing jurisprudence at the time a law was passed, not when it is challenged.

[73] The Attorney General maintains this doctrine would forever deprive the people of Guam of a valid law; it "would destroy [a] public law forever." *Id.* at 23-24. True, a finding that P.L. 20-134 is *ultra vires* would destroy that law forever, but such a finding would not prevent the Guam Legislature from passing an identical bill now. Contrary to the Attorney General's arguments, *id.* at 24-25, an *ultra vires* doctrine allows for the correction of mistakes and changing jurisprudence. It simply places the burden on the legislature to re-enact laws previously held to be unconstitutional. Maybe this is inefficient, but it is a far cry from "untenable."

## B. The Legislature

[74] The Legislature's first argument borrows the reasoning from an influential law review article, *The Writ-of-Erasure Fallacy*. Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018). In his article, Professor Jonathan Mitchell posits that "[j]udicial review is a non-enforcement prerogative, not a revisionary power over legislation. . . . [E]verything in the statute remains available for future courts to enforce if they reject or overrule the previous court's decision." *Id.* at 983. I can set aside the merits of Professor Mitchell's position for this case, as it does not change the outcome. By his article's terms, the professor was only addressing the power of *federal* courts. *E.g.*, *id.* at 936 ("The federal courts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute."). Professor Mitchell carves out a separate analysis for state courts. *See id.* at 953

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion                                                                                              Page 36 of 41

(looking at Georgia where the state supreme court may declare laws void). He confines his analysis to the federal judiciary, and I see no reason to do any differently.

[75]     The Legislature's reliance on *Ramsey v. Chaco*, 549 F.2d 1335 (9th Cir. 1977) (per curiam), is also misplaced. There, the Ninth Circuit held that a law passed by the Guam Legislature was inconsistent with the Organic Act. *Ramsey*, 549 F.2d at 1338. At the time the law was passed, all Guam laws were reported to the U.S. Congress, which had a year to nullify the local laws. *Id.* Because Congress had not acted, the Ninth Circuit held the law was approved, despite any potential conflict with the Organic Act. *Id.* The Legislature argues that this result could not have been reached if the correct analysis is to hold inorganic laws as void *ab initio*. Resp't Legislature Br. at 10-11 (Mar. 31, 2023).

[76]     This is a misreading of *Ramsey*. First, the Ninth Circuit never ruled the law at issue inorganic. *Ramsey*, 549 F.2d at 1338. Second, the whole basis for the decision was that it was *Congress* that approved the law. There is no question that Congress may amend the Organic Act and, by so doing, change what is and is not organic. Because it had this congressional review method at the time, the Organic Act effectively allowed for passive amendments. Put another way, at the time of *Ramsey*, local laws were inorganic only if Congress declared them to be. Otherwise, Congress would deem local action to be a proper use of power delegated to the local government. This was no longer the case by the time of P.L. 20-134; congressional review of local laws had ended. P.L. 20-134 could not be made organic like the law in *Ramsey*, and so any comparison between the two situations is inapposite.

[77]     Finally, the Legislature's argument that the lack of a "hammer clause" renders the language "[t]he legislative power of Guam shall extend to all rightful subjects of legislation not inconsistent with the provisions of this Act and the laws of the United States applicable to

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 37 of 41

Guam" to be merely aspirational is also unconvincing. For one, the Legislature failed to provide a specific source of authority for this proposition. Second, applying such a requirement to the Organic Act is nonsensical. Take, for example, the provision of the Organic Act which states that this court shall hear and decide appeals "by a panel of three justices." 48 U.S.C.A. § 1421-4(a)(5). This provision, too, has no "hammer clause"; nowhere does the Organic Act provide any enforcement mechanism to ensure our decisions come from a panel of three justices. Yet, this provision in the Organic Act is not a mere aspiration—it is a command. If ever the Legislature tried to mandate a panel of seven decide an appeal, such a mandate would fail. The action would violate the Organic Act and be void *ab initio*.

### III. *Webster* Did Not Open the Door to P.L. 20-134

[78]     During oral argument, *Amicus* Rohr suggested that P.L. 20-134 should not be considered void *ab initio* because the 20th Guam Legislature could have reasonably believed the law "had a shot" at passing constitutional muster. Oral Arg. at 12:04:50 (July 25, 2023). This was due to the then-recent U.S. Supreme Court decision in *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989). His argument fails for three reasons.

[79]     First, it was unreasonable to conclude that *Webster* opened the door to broader abortion restrictions. *Webster* concerned challenges to the constitutionality of four provisions of a Missouri abortion law: (1) the preamble of the law, declaring the public policy of the state to be that life begins at conception; (2) a prohibition on the use of public facilities or employees to perform abortions; (3) a prohibition on public funding of abortion counseling; and (4) a requirement that physicians conduct viability tests prior to performing abortions. 492 U.S. at 504.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion

Page 38 of 41

[80]    In considering the preamble, the majority held the language there was not binding, and so there was no need to pass on its constitutionality. *Id.* at 507. If the preamble was used to restrict abortion, then federal courts could address its legality; however, that was not the case before the Court. *Id.* at 506-07.

[81]    Moving to the use of public facilities, the Court reaffirmed its principle that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 507 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Thus, the 14th Amendment and *Roe v. Wade* were not implicated by this portion of the state law at issue. *Id.* at 509-10.

[82]    The plaintiffs argued the ban on public funding of abortion counseling did not apply to them, eliminating the case or controversy before the Court. *Id.* at 512. The Court was unanimous in directing "the Court of Appeals to vacate the judgment of the District Court with instructions to dismiss the relevant part of the complaint." *Id.* at 512-13.

[83]    The final provision—that physicians conduct viability tests for fetuses at least 20 weeks old—proved the most controversial. Under *Roe*, a state could broadly regulate abortion only after the fetus was viable. *Id.* at 516 (citing *Roe*, 410 U.S. at 165). In *Webster*, the Court allowed a regulation requiring viability tests, knowing "the tests will undoubtedly show in many cases that the fetus is not viable." *Id.* at 519. This meant the regulation increased the expense and effort of obtaining an abortion before viability, prior to the point at which the state could broadly regulate abortion. *Id.* A plurality of the Court reasoned this result was acceptable since the regulation's intent was to determine whether the fetus was viable—the point where the state may protect the fetus's interests. *Id.* at 519-20. It was only this part of *Roe*, its "rigid[ity]" in the

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 39 of 41

form of the trimester framework, that was changed by the plurality. *Id.* at 518-19, 521. Otherwise, the holding of *Roe* was left "undisturbed." *Id.* at 521.

[84]    In Part III of *Webster*, a plurality of the Court noted the case before it did not require overturning *Roe* since *Roe* dealt with a complete abortion ban compared to the narrow regulations at issue in that case. *Id.*    In a concurrence, Justice Scalia asserted the Court effectively overruled *Roe* in its viability-testing section and should have explicitly done so. *Id.* at 532 (Scalia, J., concurring).  Combining Justice Scalia's concurrence with Part III of the Opinion is the best place to argue the Court was announcing the end of *Roe*.  Yet, that is not the whole story.  The crucial fifth vote for holding the viability testing unconstitutional was Justice O'Connor.  In her concurrence, she argued *Webster* did not implicate *Roe*, and any analysis of *Roe* was unnecessary. *Id.* at 525-26 (O'Connor, J., concurring).  Thus, only one justice of the Court (Scalia) stated explicitly that *Roe* should be overturned, three justices (Chief Justice Rehnquist and Justices White and Kennedy) felt only a small narrowing was needed, one justice (O'Connor) felt *Roe* was inapplicable, and four justices, though believing *Roe* was implicated, argued for *Roe*'s continuing application.  There are thus no grounds to argue that *Webster* substantially changed the law on abortion generally.

[85]    Second, it is beyond apparent that the 20th Guam Legislature was put on notice of the legality of P.L. 20-134.  Per the District Court of Guam, Senator Elizabeth Arriola's own legal counsel "had advised her that the Bill as introduced would probably be struck down because '[j]udges are bound by Supreme Court decisions because [the decisions are] binding precedent, and that more than likely a judge would probably find that this bill was not in keeping with *Roe*

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 40 of 41

*v. Wade*.'"[10]  *Guam Soc'y of Obstetricians*, 776 F. Supp. at 1425 (alterations in original) (quoting

Dep. of Att'y June Mair at 23 (May 10, 1990)).  The Attorney General of Guam at the time

likewise agreed the law would violate *Roe*:

> The Attorney General gave as the legal opinion of her office that both bills were "violative of a woman's constitutional right of privacy as enunciated by the United States Supreme Court in *Roe v. Wade*."  The Attorney General noted that a "state cannot interfere with a woman's right of personal privacy to decide to have an abortion whatever the cause of her pregnancy.  The state may *regulate* such a decision, but it cannot deprive a woman of such a choice."  Because both bills effectively proscribed abortion, the Attorney General gave as her legal opinion that "both bills would be held unconstitutional."

*Id.* (quoting Att'y Gen.'s Op. at 1-4).  Unquestionably, there existed a right to an abortion under

the U.S. Constitution in the 1990s, and P.L. 20-134 infringed upon that right.

[86]     Third and finally, there is no need to speculate on what the constitutional status of P.L.

20-134 was because the answer was unequivocally provided by the Ninth Circuit.  *See Guam*

*Soc'y of Obstetricians*, 962 F.2d 1366.  There may be a future instance where this court is faced

with the question of whether to declare a statute void *ab initio* because it violated prevailing

constitutional law at the time of its passage, though it went unchallenged.  That is not this case.

Here, P.L. 20-134 was challenged, and that challenge was upheld.  The U.S. Supreme Court

declined to review the decision of the Ninth Circuit.  *Ada v. Guam Soc'y of Obstetricians &*

*Gynecologists*, 506 U.S. 1011 (1992) (denying certiorari).  Thus, it does not matter if one

assumes the Guam Legislature was reasonable in believing it "had a shot" when it passed P.L.

20-134; the federal judiciary definitively determined the law violated the U.S. Constitution.  It is

an inarguable fact, then, that P.L. 20-134 violated the Constitution when it was passed.

---

[10] Senator Arriola was P.L. 20-134's primary sponsor.

*In re Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Validity & Enforceability of Pub. L. No. 20-134,*
2023 Guam 11, Opinion
Page 41 of 41

## IV. Conclusion

[87]     The Organic Act, as it existed in 1990, clearly limited the power of the Guam Legislature to only pass legislation consistent with the U.S. Constitution.  When it was passed, P.L. 20-134 violated the established law on the 14th Amendment; the case of *Webster v. Reproductive Health Services* did not change that fact.  Thus, the Legislature acted *ultra vires* in passing P.L. 20-134, which makes the law void *ab initio*; it cannot be revived by subsequent changes in the law.

[88]     Holding P.L. 20-134 void is still consistent with the idea of judicial fallibility.  Judges are humans, and mistakes are inevitable.  Cases and doctrines can still be overturned.  But a crucial principle in our system of law is finality.  *See In re Registration of Title to Est. No. 2959*, 2023 Guam 6 ¶ 29.  The validity of a law should not bounce back and forth simply due to changes in judicial precedent.  Rather, once a decision has been made and any appeals settled, that case is decided.  It is not the function of the judiciary to revive policies from thirty years ago.  Should the people wish to change abortion policy in Guam, they ought to go to the Legislature, not to the courts.

[89]     Because I would find P.L. 20-134 was void *ab initio*, I concur in the judgment.

/s/
F. PHILIP CARBULLIDO
Associate Justice
